UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEFFREY A. COCHRAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PENN MUTUAL LIFE INSURANCE COMPANY and HORNOR, TOWNSEND & KENT, LLC,<br><br>Defendants. | CIVIL ACTION NO. 1:19-CV-00564-JPB |

## ORDER

This matter is before the Court on Defendants' Motion to Strike Class Action Allegations and Compel Arbitration or, in the alternative, Dismiss Plaintiff's Amended Class Action Complaint [Doc. 33]. The Court held a hearing on the matter on July 14, 2020. [Doc. 55, p. 1]. After due consideration, this Court finds as follows:

## BACKGROUND

Plaintiff Jeffrey Cochran ("Cochran") is an individual who has filed a class action complaint on behalf of himself and all others similarly situated against Penn Mutual Life Insurance Company ("Penn Mutual") and Hornor, Townsend & Kent, LLC ("HTK"). [Doc. 27, p. 1]. Penn Mutual is an insurance company and is also

HTK's parent company.  Id. at 11.  HTK is a brokerage and investment adviser firm that sells mutual funds, stocks, bonds, variable life insurance products and annuities.  Id. at 10.

In January 2013, Cochran opened a rollover individual retirement account ("IRA") with HTK.  Id. at 5.  Cochran alleges that he was thereafter "urged and directed by his HTK retirement advisor/fiduciary to invest his retirement funds in a Penn Mutual variable annuity."  Id.  On February 4, 2013, Cochran allegedly purchased "a Penn Mutual deferred variable annuity based on the recommendation of his HTK advisor, and through his HTK advisor . . . and suffered damages as a result."  Id. at 9.  Cochran maintains that because he followed his advisor's "advice, his fiduciary has raked significant unnecessary fees throughout the six-year period since he purchased the annuity," and "[a]s a result, huge amounts of money that should have been deployed for . . . Cochran's benefit have instead been siphoned off—by his fiduciary—in the form of inappropriate fees."  Id. at 5–6.

Cochran asserts that

> [b]rokerage firms sell variable annuities because of their relatively high fees and the large commissions that come with them.  The insurance and surrender fees charged to annuity owners (which are in addition to excessive investment management fees, excessive contract administration fees, and excessive add-on rider fees) yield much greater income to Defendants than would be realized from the sale of straight mutual funds providing the same investment options.  This greater income provides additional profits to Defendants and additional compensation to the selling agents, who receive higher commissions on variable annuity sales than they would on sales of

> mutual funds.  But the high fees associated with variable annuities can only be justified from the customer's standpoint by their tax-deferred growth, a benefit that is useless in an IRA like [Cochran's], which consisted entirely of already tax-qualified funds.

Id. at 4–5.  Because a brokerage firm owes a fiduciary duty to its customers, "HTK's uniform practice of recommending that its clients use tax-qualified funds to purchase variable annuities constitutes . . . [allegedly constitutes] a conflict of interest" that "cannot pass muster when held up to a fiduciary standard." Id. at 4.  Thus, Cochran seeks to challenge HTK's "practice of recommending that customers' tax-qualified accounts, such as IRAs, be used to fund variable annuity contracts, specifically those issued by its parent, Defendant Penn Mutual." Id. at 2.

The Amended Complaint "alleges that [the above] practice is a breach of the fiduciary duties that brokerage firms owe to their customers under Georgia law." Id. at 3.  As such, Cochran brings a claim for breach of fiduciary duties against HTK and a claim for procuring (or aiding and abetting) the breach of fiduciary duties against Penn Mutual. Id. at 32–33.  The Amended Complaint also includes a request for attorney's fees and punitive damages against all defendants. Id. at 34–35.

In response to the Amended Complaint, Defendants filed this Motion to Strike the Class Action Allegations and Compel Arbitration or, in the alternative, Dismiss Plaintiff's Amended Class Action Complaint.  Defendants request that the Court strike Cochran's class action claims because Cochran cannot meet class

3

action certification requirements and that the Court compel Cochran's individual claims to arbitration pursuant to the terms of the parties' Account Agreement. [Doc. 33-1, p. 11]. In the alternative, Defendants request that the Court dismiss Cochran's entire Amended Complaint because Cochran is precluded under the Securities Litigation Uniform Standards Act ("SLUSA") from bringing a breach of fiduciary duties claim and because the breach of fiduciary duties claim is time-barred. Id. at 13–14. Defendants also argue the Amended Complaint should be dismissed because Cochran fails to state a claim against HTK for breach of fiduciary duties or against Penn Mutual for procuring (or aiding and abetting) the breach of fiduciary duties. Id. at 14.

## DISCUSSION

**A. Preliminary Matters**

As a preliminary issue, this Court must address which of the Federal Rules of Civil Procedure is the proper vehicle for challenging a complaint under SLUSA. Although Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Cochran argues that Rule 12(b)(1)—lack of subject matter jurisdiction—is the proper vehicle for challenging a complaint under SLUSA. [Doc. 34, p. 18 n.17].

The "[c]ourts have not achieved consensus on which subsection of Rule 12 is the right vehicle to raise a motion seeking SLUSA preclusion—which seeks a

ruling, in the statutory language, that the lawsuit may not be maintained as a covered class action." Hampton v. Pac. Inv. Mgmt. Co. LLC, 869 F.3d 844, 846 (9th Cir. 2017) (citation and punctuation omitted). The Third and Ninth Circuits have held that SLUSA dismissals are jurisdictional, while the Seventh Circuit has held that there is no merit to the suggestion that SLUSA dismissals are jurisdictional. Compare LaSala v. Bordier et Cie, 519 F.3d 121, 129 n.7 (3d Cir. 2008), and Hampton, 869 F.3d at 847, with Brown v. Calamos, 664 F.3d 123, 127–28 (7th Cir. 2011). The Second Circuit has indicated that, if presented the question, it would hold SLUSA dismissals jurisdictional. In re Kingate Mgmt. Ltd. Litig., 784 F.3d 128, 135 n.9 (2d Cir. 2015). The Eleventh Circuit, however, has not directly addressed this issue.

"The dismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'" Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981). Therefore, such dismissals are with prejudice. See Woodson v. Eleventh Jud. Cir. in & for Miami Dade Cty., 791 F. App'x 116, 119 (11th Cir. 2019). The dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), however, is not a judgment on the merits. See Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 891 (11th Cir. 2013) ("Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case."). Therefore, such dismissals are without prejudice. See Woodson, 791 F. App'x at 119. Because a dismissal under Rule

5

12(b)(6) has a claim-preclusive effect while a dismissal under Rule 12(b)(1) does not, the distinction between the two Rules is important.

Claim preclusion prevents the future assertion of claims "[arising] out of the same 'nucleus of operative fact.'" Sealey v. Branch Banking & Tr. Co., 693 F. App'x 830, 833 (11th Cir. 2017) (citation omitted). However, as noted below, SLUSA only bars a plaintiff from bringing certain state law claims as a *class action*. Therefore, in the event claims are dismissed as precluded by SLUSA, a plaintiff should not be prevented from repleading *all* claims "arising out of the same nucleus of operative fact." Although SLUSA prevents the state-law claims brought on a class-wide basis, SLUSA does not prevent the plaintiff from "return[ing] to the district court (or depart[ing] for an appropriate state court) to replead . . . state-law claims on an individual basis, or to plead new federal securities claims either as an individual or as a class representative." Hampton, 869 F.3d at 848; see also Behlen v. Merrill Lynch, 311 F.3d 1087, 1089, 1096 (11th Cir. 2002) (affirming the district court's decision to dismiss the class-wide claims with prejudice, but the individual claims without prejudice). For this reason, the Court finds that SLUSA dismissals are jurisdictional such that the proper vehicle for challenging a complaint under SLUSA is Rule 12(b)(1).

Because this Court finds that SLUSA dismissals present a jurisdictional question, it will proceed by first analyzing Defendants' alternative Motion to Dismiss.

**B. Motion to Dismiss Cochran's Class Action Claims**

    a. <u>Allegations Against HTK:  Whether the Securities Litigation Uniform Standards Act precludes Count 1—the breach of fiduciary duties</u>

Congress passed the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to establish "uniform standards for class actions alleging securities fraud" and to institute "heightened pleading requirements for class actions alleging fraud in the sale or purchase of national securities."  <u>Behlen</u>, 311 F.3d at 1090–91.  Shortly thereafter, it became apparent to Congress that claimants had started bringing suit in state court rather than federal court to evade the PSLRA's heightened pleading requirements, thereby frustrating the objectives of the PSLRA.  <u>Id.</u> at 1091.

To remedy this issue, Congress passed SLUSA.  <u>Id.</u>  SLUSA made "federal court, with limited exceptions, the sole venue for class actions alleging fraud in the purchase and sale of covered securities."  <u>Id.</u> at 1091–92.  Congress also "mandated that such class actions would be governed by federal law rather than state law."  <u>Id.</u> at 1092.  SLUSA, therefore, "preempts certain state law claims" and "requires immediate dismissal of covered lawsuits."  <u>Id.</u>

7

Claims are precluded under SLUSA if: "(1) the suit is a covered class action, (2) the plaintiffs' claims are based on state law, (3) one or more covered securities has been purchased or sold, and (4) *the defendant misrepresented or omitted a material fact* in connection with the purchase or sale of such security." Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir. 2003) (citation and punctuation omitted) (emphasis added). Cochran concedes that "[t]he only one of these four requirements at issue here is whether [Cochran] is alleging a misrepresentation or omission." [Doc. 34, p. 19]. The Court therefore limits its analysis to this factor.

SLUSA expressly preempts claims "that defendants 'used or employed a deceptive device or contrivance in connection with the purchase or sale of a covered security.'" Dudek v. Prudential Sec., Inc., 295 F.3d 875, 880 (8th Cir. 2002) (affirming the district court's dismissal based on a finding that SLUSA preempted the plaintiffs' class action complaint "alleging improper marketing of tax-deferred annuities to accounts that already enjoyed tax-deferred status"); see also Behlen, 311 F.3d at 1089, 1096 (affirming the district court's dismissal based on a finding that SLUSA preempted the plaintiffs' class action complaint alleging breach of contract, breach of implied covenants and duties, breach of fiduciary duty, unjust enrichment and negligence and/or wantonness).

Regarding the material misrepresentation or omission required by the fourth factor,

> a claim alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," . . . which subjects it to SLUSA preemption, when an allegation of a misrepresentation in connection with a securities trade is a "factual predicate" of the claim, even if misrepresentation is not a legal element of the claim . . . . In other words, when one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable . . . . [W]hen an allegation of misrepresentation in connection with a securities trade, *implicit or explicit*, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail.

LaSala, 519 F.3d at 141 (emphasis added). Importantly, the "mere avoidance of magic language" is not enough to avoid SLUSA preclusion. Feitelberg v. Merrill Lynch & Co., 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002).

> If in fact the claims allege misrepresentations or omissions or use of manipulative or deceptive devices in connection with the purchase or sale of securities and otherwise come within the purview of SLUSA, artful avoidance of those terms or scienter language will not save them from preemption. In other words, if it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up.

Id.

Here, Cochran contends that the breach of fiduciary duties claim does not satisfy the fourth factor required for SLUSA preclusion because the claim does not rely on whether HTK misrepresented or omitted a material fact regarding the

9

purchase. [Doc. 34, pp. 18–26]. Cochran argues that HTK as a firm, not just the individual advisors, owes a fiduciary duty to clients, and whether HTK breached its fiduciary duties by offering variable annuities to people seeking to invest tax-qualified retirement funds does not rely on specific representations made by advisors to individual clients. [Doc. 89, pp. 19–20].

However, in the Complaint, Cochran repeatedly references HTK's advice, assistance and recommendations. [See Doc. 27, pp. 2, 4–5, 13, 27] (describing HTK's general "practice of recommending" tax-qualified accounts be used to fund variable annuity contract, HTK's "investment advice" and HTK's process for "mak[ing] their recommendations"); see also id. at 5, 9–10 (describing how Cochran's specific HTK advisor "urged and directed" Cochran to invest in a Penn Mutual variable annuity, how Cochran "followed that advice," how the HTK advisor "convinced" Cochran and others to invest in a variable annuity and how Cochran was sold a deferred variable annuity "based on the recommendation of his HTK advisor, and through his HTK advisor"); id. at 13, 26 (explaining how HTK's job was to "advise and assist [Cochran] in making appropriate investments," how Cochran "would pay a fee for such advice and assistance," how Cochran and others "trusted HTK to recommend appropriate investments" and how HTK failed to "recommend[] appropriate investments"); id. at 28, 32–33 (noting HTK's "duty to recommend appropriate investments" and describing how HTK "violated its

fiduciary duties . . . by providing investment advice that was not in [the] customers' best interests").  Although Cochran is careful not to use the terms misrepresentation or omission, his references to HTK's advice and recommendations reveal the core of his Complaint:  some type of misrepresentation or omission related to what HTK stated or did not state when providing recommendations and advice.  The artful avoidance of these terms cannot save Cochran from preemption.  Furthermore, when the Court asked Cochran's counsel to explain how Cochran's breach of fiduciary duties claim is not, in substance, based upon an omission, counsel conceded that it is.  [See Doc. 89, p. 20] ("The Court:  . . . . HTK in each instance should have told their client this is inappropriate for you, you should not buy this.  Is that correct?  Mr. Bain:  This should never have happened, yes.  Yes.").

Additionally, the essence of the Complaint is HTK's overall fraudulent practice of recommending variable annuities in order to make more money on fees and commissions.  The Eighth Circuit analyzed similar arguments in Dudek.  In Dudek, the plaintiffs asserted "five state law causes of action—breach of fiduciary duty by selling 'inherently unsuitable and inappropriate' tax-deferred annuities, unjust enrichment, declaratory and injunctive relief, reformation, and conspiracy to breach fiduciary duties."  295 F.3d at 879.  The plaintiffs alleged that the defendants improperly marketed tax-deferred annuities to accounts that already

enjoyed tax-deferred status. Id. at 877. The plaintiffs argued that "[t]he annuities were inappropriate investments . . . because tax-deferred accounts did not need the tax benefits, and therefore the extra fees and costs that tax-deferred annuities entail were a waste of the investors' money." Id. The defendants moved to dismiss the plaintiffs' state law claims as preempted by SLUSA, and the district court granted the motion finding that the claims "were in substance based upon material misrepresentations and non-disclosures in the purchase or sale of a covered security." Id. at 877–78.

On appeal, the plaintiffs argued that their claims were "based upon excessive fee charges, not alleged misconduct *in connection with* the purchase or sale of a security." Id. at 878. The Eighth Circuit noted that the plaintiffs were claiming that "defendants' misconduct caused plaintiffs to invest in inappropriate securities. Regardless of what made the investments inappropriate, if these are covered fraud claims . . . they are claims 'in connection with the purchase or sale of a covered security' for purposes of SLUSA preemption." Id. at 878–79. The Court ultimately found that although plaintiffs did not specifically allege fraud, misrepresentation or non-disclosure, these issues

> permeated their complaint . . . and the overall target is what [the] plaintiffs call[ed] [the] defendants' "general business plan to sell tax-deferred annuities for investment by persons owning qualified retirement plans." As the district court recognized, the essence of [the complaint] is the unlawful marketing of tax-deferred annuities, either

>by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts.

Id. at 880.

Although the Eleventh Circuit has not directly addressed this issue, the Court has favorably cited Dudek in a similar case.  See Behlen, 311 F.3d at 1094. In Behlen, the plaintiffs asserted claims for breach of contract, breach of implied covenants and duties, breach of fiduciary duty, unjust enrichment and negligence and/or wantonness.  Id. at 1089.  The plaintiffs alleged "that the defendants sold [them] Class B shares in [a] growth fund when they were unknowingly eligible to purchase Class A shares" and "that the defendants sold them the wrong shares, because the Class B shares were subject to higher fees and commissions than the Class A shares."  Id.  The Court compared the plaintiffs in Behlen to the plaintiffs in Dudek and noted that

>although Behlen argue[d] that the excess fees and commissions paid by the class members were incidental to the sale of the securities, it seems certain that the very reason they were sold the Class B shares was *because* those shares were subject to the excess fees and commissions.  Thus, the fees and commissions were not incidental to the sale of the securities, but were an integral part of the transactions.

Id. at 1094.  The Court ultimately found "that the crux of the complaint was that the defendants either misrepresented or omitted crucial facts about the Class A and Class B shares, thus causing [Behlen] and the class to invest in inappropriate securities."  Id.

13

Similarly, here, regardless of what made the deferred variable annuities inappropriate, Cochran is alleging that HTK's misconduct caused him and the Class members to invest in inappropriate securities. Although Cochran argues that HTK's representations are irrelevant, according to the Complaint, the reason Cochran and the Class members purchased a deferred variable annuity was *because* of what HTK represented when providing its advice and recommendations. In other words, the essence of the Complaint is the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts. Thus, HTK's representations are not irrelevant. Therefore, this Court finds that SLUSA precludes the class action breach of fiduciary duties claim, and the Court need not reach Defendants' remaining arguments regarding the statute of limitations and Cochran's failure to state a claim for breach of fiduciary duties.

Additionally, the class action claim against Penn State for procuring (or aiding and abetting) the breach of fiduciary duties, as well as the class action claims for attorney's fees and punitive damages against both defendants, are derivatives of the breach of fiduciary duties claim against HTK. Because the breach of fiduciary duties claim is precluded, the remaining derivative claims are also precluded. Therefore, Defendant's Motion to Strike Class Action Allegations is denied as moot.

**C. Motion to Compel Cochran's Individual Claims to Arbitration**

As the Court initially noted, a plaintiff in Cochran's position would normally have the option of repleading his state-law claims on an individual basis. Here, however, Defendants have also moved to compel arbitration of Cochran's individual claims.

Under 9 U.S.C. § 4,

[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

Importantly, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).

Here, the terms of the parties' Account Agreement included the following Arbitration Clause: "It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted before the Financial Industry Regulatory Authority ("FINRA") and in accordance with its rules." [Doc. 27-1, p. 16]. In Cochran's Response to Defendants' Motion, Cochran does not challenge Defendants' argument that if the class action claims fail, Cochran's individual claims should go to arbitration. Importantly, "[a]rguments and issues not addressed in an opposition brief are deemed waived."

15

E.E.O.C. v. Riverview Animal Clinic, P.C., 761 F. Supp. 2d 1296, 1304 (N.D. Ala. 2010).  Additionally, during oral argument, Cochran, again, did not challenge the arbitration clause or Defendants' arguments regarding Cochran's individual claims being subject to arbitration.

Therefore, this Court finds that the making of the agreement for arbitration and the failure to comply therewith is not in issue and **HEREBY ORDERS** the parties to proceed to arbitration on Cochran's individual claims in accordance with the terms of the Account Agreement.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike and Compel Arbitration or, in the alternative, Motion to Dismiss [Doc. 33] is **GRANTED in part and DENIED in part**.  Defendants' Motion to Strike Class Action Allegations is **DENIED** as moot.  Defendants' Motion to Dismiss Class Action Allegations is **GRANTED**, and Defendants' Motion to Compel Arbitration is **GRANTED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 12th day of August, 2020.

_____
**J. P. BOULEE**
United States District Judge